**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

NURSES' REGISTRY AND HOME                                CASE NO. 15-51278
HEALTH CORPORATION

DEBTOR

NURSES' REGISTRY AND HOME                                PLAINTIFF
HEALTH CORPORATION

V.                                                       ADV. NO. 15-5074

SYLVIA MATHEWS BURWELL, in her                           DEFENDANTS
capacity as Secretary of the United States
Department of Health & Human Services;
CENTERS FOR MEDICARE AND
MEDICAID SERVICES; and
ADVANCEMED CORPORATION

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Stay Pending Appeal [AP Doc. 11] and the United States' Motion for Stay Pending Appeal of Order Allowing Interim Use of Cash Collateral [Bk Doc. 68].[1]  On July 1, 2015, this Court, in an oral ruling, granted Plaintiff's Emergency Motion for a Preliminary Injunction or Temporary Restraining Order [AP Doc. 2] in part and granted Plaintiff's Expedited Motion for Interim Use of Cash Collateral [Bk. Doc. 7] in full, setting Plaintiff's Motions for a final hearing on July 30, 2015, and enjoining the Defendants from suspending payments up until the date of that final hearing.  On July 2, 2015, the Court entered a written order memorializing its oral ruling on the injunction and supplementing its oral findings of fact and conclusions of law with an additional discussion of authorities cited by Defendants for the first time in closing argument.  [AP Doc. 5.]  It also entered a written order

---

[1] References to the docket in this adversary proceeding appear as [AP Doc. —]. References to the docket in the Debtor's main bankruptcy case appear as [Bk. Doc. —].

granting the motion for interim use of cash collateral. [Bk Doc. 55.] Defendants appealed both orders. [AP Doc. 7; Bk Doc. 58.]

In entering the preliminary, 28-day injunction, the Court did not make a finding on Plaintiff's likelihood of success on the merits of its claims. As it noted at the hearing, likelihood of success on the merits would become a greater consideration at the final hearing on Plaintiff's Motion, at which Plaintiff must satisfy a heavy burden to show a likelihood of success. Instead, the injunction was based on the irreparable harm Plaintiff would suffer in absence of the injunction, the balance of the harms to Plaintiff and Defendants, and whether the injunction would serve the public interest.

The Defendants' motion to stay pending appeal, however, focuses almost entirely on their likelihood of success on appeal, giving only perfunctory discussion to irreparable harm to Defendants, harms to third parties, and the public interest.[2] This ignores the central focus of the appealed order, which relied on those three prongs and found they weighed overwhelmingly in favor of granting the injunction. Moreover, Defendants do not persuade the Court that they are likely to succeed on appeal. As this Court explained last week and will explain again in greater detail below, its jurisdiction under 28 U.S.C. § 1334 is unaffected by Medicare's jurisdictional bar on judicial review of unexhausted Medicare disputes under 28 U.S.C. §§ 1331 and 1346.

I.   Motion For Stay of Appeal of Preliminary Injunction.

    A.   Standard of Review.

In determining whether a stay should be granted pending appeal, the Sixth Circuit has instructed lower courts to consider four factors: (1) the likelihood that the party seeking the stay

---

[2] Defendants' motion to stay the interim cash collateral order incorporates its motion to stay the injunction by reference, making no additional arguments.

2

will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Russell v. Lundergan-Grimes*, 769 F.3d 919, 921 (6th Cir. 2014) (per curiam). These factors, notably, are essentially the same factors that a court must consider to grant a preliminary injunction, and that this Court considered last week in entering the appealed orders.

     B.     Likelihood of Success.

Defendants primarily argue they are entitled to a stay because they are likely to succeed on appeal. [AP Doc. 11 at 6-15.] As noted above, the Court did not rely on Plaintiff's likelihood of success on the merits in granting injunctive relief. It did, however, hold that it had subject-matter jurisdiction to enter its order. Defendants challenge that conclusion and argue that they are likely to succeed on appeal, primarily because they assert this Court's jurisdictional holding is likely to be reversed.

Before considering Defendants' arguments, the Court notes that Defendants will have to overcome a substantial jurisdictional hurdle of their own making in order to succeed on appeal: namely, showing that the Court's preliminary injunction is "final" (and thus appealable) within the meaning of 28 U.S.C. § 158(a). Precedent on the finality of bankruptcy courts' preliminary injunctions is mixed, and appears to largely turn on whether the bankruptcy court manifests an intention to revisit the preliminary injunction at a later date.[3] The District Court will make its own decision on jurisdiction, but the uncertain appealability of this Court's order makes it extremely difficult to find Defendants are likely to succeed on appeal.

---

[3] The final hearing is set for July 30, 2015, one day after the District Court will rule on dispositive motions in the False Claims Act action.

3

        1.        <u>Bankruptcy Jurisdiction over Unexhausted Medicare Act Disputes</u>.

Defendants principally argue that they are likely to succeed because this Court erred in holding it had subject-matter jurisdiction over an unexhausted Medicare Act dispute. In so arguing, they only address one of the three rationales this Court gave for its exercise of jurisdiction–the additional rationale given in its written order.

In its oral ruling, the Court held that it had jurisdiction because, by declining to evaluate Plaintiff's likelihood of success on the merits, it was not adjudicating the merits of Medicare Act claims. The Defendants' arguments on the merits are not relevant at this time; they will become relevant when the Court again takes this matter up on a final hearing in late July.

The Court further held that Plaintiff's claims fit an exception to the bar on federal jurisdiction over Medicare Act claims that was announced in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). As the Supreme Court subsequently explained, *Michigan Academy* held that there was an exception to the statutory bar where applying it "would not lead to a channeling of review through the agency, but would mean no review at all." *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 17 (2000). Had this Court waited for the Medicare process to play itself out while Medicare continued to suspend payments, the Debtor would have become defunct, and the Debtor would never have been heard on its request for turnover. Thus, channeling the Debtor's claims through the agency would mean no judicial review of its claims at all. Defendants do not address these points, and for that reason alone the Court is unable to find Defendants are likely to succeed on their jurisdictional arguments on appeal.

Defendants do, however, address the Court's supplemental reasoning in its written order. The Court, following two courts of appeal and several bankruptcy courts,[4] held that the statutory bar on federal jurisdiction over unexhausted Medicare Act disputes, codified at 42 U.S.C. § 405(h), did not apply to bankruptcy jurisdiction under 28 U.S.C. § 1334. [AP Doc. 5 at 2-3.] It reached this conclusion for the simple reason that § 405(h) expressly bars only § 1331 and § 1346 jurisdiction over unexhausted Medicare Act disputes. *See* 42 U.S.C. § 405(h) ("No action against the United States . . . or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."); 42 U.S.C. § 1395ii (applying § 405(h) to the Medicare Act).

Defendants acknowledge that the plain language of § 405(h) does not bar bankruptcy jurisdiction over unexhausted Medicare Act disputes. They argue, however, that the legislative history of § 405(h) shows that § 405(h)'s limitation to § 1331 and § 1346 jurisdiction is a drafting error, and that § 405(h) bars all federal subject-matter jurisdiction over unexhausted Medicare Act claims. The Court did not agree last week, and does not agree this week.

The legislative history of § 405(h) is recounted well in the Sixth Circuit's opinion in *BP Care, Inc. v. Thompson*, 398 F.3d 503, 514 n.11 (6th Cir. 2005) (Rogers, J.).[5] Section 405(h)

---

[4] Defendants argue that the bankruptcy court decisions on which the Court relied have been reversed or vacated. The recently reversed decision, *In re Bayou Shores SNF, LLC*, 525 B.R. 160 (Bankr. M.D. Fla. 2014), followed the persuasive authority of two circuits, as this Court did, and did not become less persuasive when it was reversed by a District Court that chose to follow the authority of other courts. The vacated decisions granting injunctive relief against Medicare on which the Court relied were, in one instance, vacated because the case in which it was entered was dismissed, rendering the previously entered injunction moot, or, in the other instance, because a consent order was entered between Medicare and the debtor that maintained the status quo of the injunction. Such vacaturs in no way undermine the persuasive authority of the courts' opinions.

[5] Despite Defendants' protestations to the contrary [*see* AP Doc. 11 at 10-11], footnote 11 in *BP Care* expressly left open the issue of whether § 405(h) applied to bases for federal jurisdiction unmentioned in its text, and acknowledged that both the plain-language reading and Defendants' broader reading were arguable positions. After writing that "[b]oth the Supreme Court and this circuit have avoided deciding whether § 405(h) bars mandamus jurisdiction under 28 U.S.C. § 1361, in the same way that it bars jurisdiction under §§1331 and 1346," 398 F.3d at

was enacted in 1939, as part of the Social Security Act ("SSA"). As written, it barred jurisdiction under 28 U.S.C. § 41. At that time, 28 U.S.C. § 41 contained virtually all the important grants of subject-matter jurisdiction to the district courts, including federal-question, diversity, and bankruptcy. *See* 28 U.S.C. § 41(19) (1940) (repealed) (granting jurisdiction over "all matters and proceedings in bankruptcy").

In 1948, however, Congress re-codified Title 28 and separated § 41's twenty-eight subsections into new sections 1331 through 1359. This caused no substantive change in the coverage of the SSA's jurisdictional bar; courts simply referred to § 41 as it existed in 1939. *See Weinberger v. Salfi*, 422 U.S. 749, 756 n.3 (1975) (holding twenty-seven years after Title 28's re-codification that § 405(h)'s reference to § 41 continued to capture all jurisdictional grants formerly housed within that section).

In 1976, however, only one year after the Supreme Court held that § 405(h)'s reference to § 41 continued to operate, the Office of Law Revision Counsel decided to revise § 405(h)'s reference to § 41, and replaced it in the U.S. Code with a reference to §§ 1331 and 1346. These provisions, respectively, grant subject-matter jurisdiction over federal questions, and over suits against the United States. *See* 28 U.S.C. §§ 1331, 1346. Clearly the Office of Law Revision Counsel believed that these grants of jurisdiction were the only ones relevant to SSA or Medicare Act claims. The Office's revision had no effect, as the Statutes at Large enacted by Congress prevail over the U.S. Code in cases of inconsistency.

But in 1984, Congress enacted the Office's revision in the Deficit Reduction Act of 1984 ("DRA") under the heading of "Technical Corrections," along with 219 other such technical

---

514, the court wrote in footnote 11 that "[t]he literal wording of § 405(h) bars actions under 28 U.S.C. § 1331 or 1346 . . . it is arguable, as a matter of statutory construction, that jurisdiction under 28 U.S.C. § 1361 is precluded by . . . § 405(h) . . . *but see* [contrary authority] finding that § 405(h) does not affect mandamus jurisdiction under § 1361 . . . ").

6

corrections to the SSA. Pub. L. No. 98-369, 98 Stat. 1162 (1984), § 2663(a)(4)(D). Congress wrote that none of the 220 technical corrections should "be construed as changing or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before that date." *Id.*, § 2664(b).[6]

On the basis of this interpretive note, a number of courts have held that § 405(h) was amended in error, and that it continues to bar Medicare Act claims brought under any type of federal jurisdiction formerly codified in 28 U.S.C. § 41. *See, e.g.*, *Fla. Agency for Health Care Admin. v. Bayou Shores SNF, LLC (In re Bayou Shores SNF, LLC)*, No. 8:14-bk-9521-MGW, 2015 WL 3935491 (M.D. Fla. June 26, 2015); *In re St. Johns Home Health Agency, Inc.*, 173 B.R. 238, 244 (Bankr. S.D. Fla. 1994); *In re St. Mary Hosp.*, 123 B.R. 14, 17 (E.D. Pa. 1991); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488-90 (7th Cir. 1990) (Cudahy, J.). This argument fails for two reasons.

First, the power of courts to correct Congress's apparent drafting errors is sharply limited. The Supreme Court has written that "[i]f Congress enact[s] into law something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors. . . ." *Lamie v. United States Tr.*, 540 U.S. 526, 542 (2004) (internal quotation marks omitted). Generally, courts only correct drafting errors where they are certain, usually for reasons of absurdity, that an error occurred, *see United States v. Coatoam*, 245 F.3d 553, 557-58 (6th Cir. 2001), and where the error is a "technical mistake in transcribing" a law rather than a "substantive mistake in designing" a law. *King v.*

---

[6] Congress also enacted sixty-five technical corrections to the Medicare Act in the DRA, providing the same disclaimer. See *id.*, § 2354(e)(1).

*Burwell*, --- S. Ct. ----, 2015 WL 2473448, at *24 (Scalia, J., dissenting);[7] *see also* John D. Ohlendorf, *Textualism and the Problem of Scrivener's Error*, 64 Me. L. Rev. 119, 158 (2011) (distinguishing between correctable deviations from Congress's "intended wording" and uncorrectable deviations from Congress's "intended meaning").[8]

The Court is reluctant to hold that a reading of § 405(h) embraced by two circuits[9] [*see* Doc. 5 at 2] and acquiesced to by Congress for over twenty years is absurd. Though incongruous, there is nothing particularly absurd about a bankruptcy exception to the Medicare exhaustion requirement. More fundamentally, the 1984 amendment to § 405(h) was clearly no drafting error, but at most a considered mistake of judgment. Eight years after the codifiers' revision, Congress made a choice to adopt it and expressly closed off only two of the many avenues to federal jurisdiction over Medicare disputes. If Congress hoped to bar all federal jurisdiction over unexhausted Medicare claims but mistakenly believed it could do so by only barring § 1331 and § 1346 jurisdiction, this Court cannot correct their mistake.

The other reason Defendants' legislative history argument fails is that at least several of the technical amendments Congress enacted in the DRA made undeniably substantive changes to Social Security and Medicare, belying Congress's blanket assertion that none of the technical amendments were intended to affect any preexisting rights or interpretations. The Court gives three examples; undoubtedly there are many others.

---

[7] The majority opinion in *Burwell*, which did not rely on a drafting error theory, is not to the contrary.

[8] *Coatoam*, for example, corrected a "simple drafting error when . . . [Congress] designated the mandatory condition for domestic violence offenders as subsection (a)(4) instead of (a)(5)" that led to absurd results. *Coatoam*, 245 F.3d at 557-58.

[9] The Ninth Circuit, while holding in *Kaiser v. Blue Cross of California*, 347 F.3d 1107 (9th Cir. 2003) (Cudahy, J., sitting by designation), that diversity jurisdiction over Medicare Act claims is barred by § 405(h) notwithstanding its lack of a reference to 28 U.S.C. § 1332, recently reaffirmed its holding that § 405(h) does not bar bankruptcy jurisdiction over Medicare Act claims. *See Do Song Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 n.11 (9th Cir. 2010).

The first example is a DRA amendment to 42 U.S.C. § 1307, which at the time made it a crime to impersonate, inter alia, a "former wife divorced" of a Social Security beneficiary for purposes of obtaining the beneficiary's Social Security number or information about his benefits, to also make it a crime to impersonate a "divorced husband, surviving divorced wife, surviving divorced husband, surviving divorced mother, [or] surviving divorced father." Pub. L. No. 98-369, § 2663(e)(2)(3). If Defendants were correct that the DRA's technical amendments made no substantive changes and should be disregarded, it would follow that thirty-one years after the DRA's enactment it is still only a crime to impersonate a divorced *wife* of a Social Security beneficiary–not a divorced husband or surviving divorced father or mother.

Second, Congress amended 42 U.S.C. § 422(b)(4), since repealed, which mandated deductions from Social Security benefits on account of refusal to accept rehabilitation services, to not apply to "full-time elementary or secondary school students" between the ages of eighteen to twenty-two, whereas § 422(b)(4) previously carved out all "full-time students" of the same ages. Pub. L. No. 98-369, § 2663(a)(15)(C). If Defendants were right about the ineffectiveness of the DRA's technical amendments, college students between the ages of eighteen to twenty-two would have continued to be exempt from § 422(b)(4) until its repeal in 1999.[10]

Third, and most remarkably, a "technical amendment" in the DRA repealed an entire title of the SSA, Title XIII, which provided a program of unemployment benefits for federal seamen. *See* Pub. L. No. 98-369, § 2663(f) ("Title XIII of such Act is repealed."); 42 U.S.C. §§1331-1336

---

[10] The amended § 422(b)(4) cross-referenced a provision in 42 U.S.C. § 402(d) defining a full-time elementary or secondary school student to not include students receiving "education . . . beyond grade 12." 42 U.S.C. § 402(d)(7)(C)(ii). Prior to amendment, § 422(b)(4) referenced a definition in § 402(d) defining a "full-time student" as one enrolled in "a school or college or university." 42 U.S.C. § 402(d)(7)(C) (1976) (repealed).

9

(1982) (repealed). If the DRA's technical amendments truly did not "chang[e] or affect[] any right," the Reconversion Unemployment Benefits for Seamen program is still federal law.[11]

In view of the foregoing, the Court is convinced that some of the DRA's technical amendments to the SSA did make substantive changes to the Act, and that its amendment to § 405(h), wise or unwise, was one of them. Defendants' jurisdictional arguments are not likely to succeed on appeal.

2.  *MCorp* and its Applicability to this Action.

Defendants next argue they are likely to succeed on appeal because this Court disregarded the teaching of *Board of Governors of the Federal Reserve System v. MCorp Financial Services*, 502 U.S. 32 (1991). In *MCorp*, the Supreme Court held that § 1334's grant of bankruptcy jurisdiction did not trump an explicit jurisdictional bar on federal or state-court injunctions of certain Federal Reserve Board proceedings. *MCorp*, 502 U.S. at 41. The provision at issue in *MCorp* could not have been more express; it provided that "no court shall have jurisdiction to affect by injunction or otherwise" the relevant Board proceedings. 12 U.S.C. § 1818(i)(1) (emphasis supplied). As the Court has explained in great detail, *supra*, § 405(h) does not explicitly or implicitly address bankruptcy jurisdiction. *MCorp*'s treatment of a provision that explicitly addressed *all* grants of federal subject-matter jurisdiction, therefore, is completely inapposite. Defendants are unlikely to succeed on appeal by relying on *MCorp*.

---

[11] At least one of the DRA's sixty-five "technical amendments" to the Medicare Act, while minor, is likewise unmistakably substantive. This amendment amended 42 U.S.C. § 1395y's exclusion of certain benefits during the period from when an individual becomes eligible under Medicare to "the month in which such individual attains the age of 70," 42 U.S.C. § 1395y(b)(3)(A)(iii) (1982), to an exclusion of benefits during the period from eligibility to "the month *before the month* in which such individual attains the age of 70." 42 U.S.C. § 1395y(b)(3)(A)(iii) (Supp. 1985) (repealed) (emphasis supplied); *see* Pub. L. 98-369, § 2354(b)(31). In other words, this "technical amendment," which Congress claimed did not "affect[] any right," abbreviated a benefits exclusion by a month.

3. The Applicability of § 542 to Disputes about Title to Property.

On the merits, Defendants argue that they are likely to succeed on appeal because 11 U.S.C. § 542, the turnover provision of the Bankruptcy Code, cannot be used to seek turnover of disputed property. Section 542(b) provides that any entity in possession of property that a trustee may use, sell, or lease under § 363 of the Code must deliver such property to the trustee. 11 U.S.C § 542(a). Section 363(b)(1) gives trustees the power to use, sell, or lease property of the estate. 11 U.S.C. § 363(b)(1). Section 1107 gives a chapter 11 debtor in possession (the Plaintiff herein) the powers of a trustee. 11 U.S.C. § 1107(a). It therefore follows that § 542 authorizes courts to order the turnover of property of the estate to chapter 11 debtors. Nothing in § 542 limits this authority to uncontested estate property.

Nevertheless, Defendants cite some authority that "a debtor cannot use the turnover provisions [of the Code] to . . . demand assets whose title is in dispute." *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991). Neither the cited authority, nor the authorities it cites, is binding on this Court. The cases on which *Inslaw* relied appear to have imported principles of summary and plenary jurisdiction, which prevailed under the Bankruptcy Act of 1898 and did not survive the enactment of the Bankruptcy Code, into § 542. *See, e.g.*, *Satelco, Inc. v. N. Am. Publishers, Inc. (In re Satelco, Inc.)*, 58 B.R. 781, 785-86 (Bankr. N.D. Tex. 1986) (arguing that the pre-Code "doctrine of possession as a predicate to the exercise of jurisdiction by the bankruptcy court" controlled the scope of § 542).

Whatever the theoretical basis for *Inslaw*'s judicial gloss on § 542, authorities that do bind this Court hold that debtors can invoke § 542 where title is in dispute. Chief among them is the Supreme Court itself. The Supreme Court has interpreted § 542 to apply to a turnover dispute in which the Internal Revenue Service (IRS) claimed it, not the debtor, owned property it

11

seized prior to bankruptcy. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983). Even though the IRS disputed title all the way up to the Supreme Court, the Supreme Court both held a cause of action lay under § 542 for turnover and resolved the title dispute. The Sixth Circuit, in a case Defendants cite, recently decided the merits of a contested turnover action, affirming the bankruptcy court's decision of same. *See Lawrence v. Commonwealth of Ky. Trans. Cabinet (In re Shelbyville Road Shoppes, LLC)*, 775 F.3d 789 (6th Cir. 2015) (Rogers, J.). It did not hold that there was no cause of action for turnover given the disputed title of the subject property, but that the request for turnover failed on the merits. Other authorities are too numerous to mention. Defendants' argument that § 542 does not apply if the defendant to a turnover action contests title is unlikely to succeed on appeal.

      4.      <u>Whether This Court Afforded Debtor "a Haven for Wrong-Doers."</u>

Defendants argue at some length [AP Doc. 11 at 11-13] that they are likely to succeed on appeal because this Court "disregard[ed] the fundamental principle that bankruptcy court is not intended to serve as a haven for wrong-doers." [*Id.* at 11.] The Court is well aware of this fundamental principle, and numerous provisions of the Code applicable in this case put it into practice by allowing parties in interest to seek appointment of a trustee and/or conversion or dismissal for bad faith. *See* 11 U.S.C. §§ 1104, 1112. But Defendants have sought none of these remedies, and Debtor's alleged wrong-doing has not been proven in this Court, nor in the False Claims Act action currently pending in the District Court, or even in the pending administrative investigation of Debtor's practices. Absent some proof of wrongdoing, this Court cannot deny Debtor the relief it is entitled to under the Code. Defendants are not likely to succeed on this ground on appeal.

The Court has carefully considered the Defendants' remaining arguments that they are likely to prevail on appeal and finds them without merit. Defendants may succeed on appeal. But their likelihood of success is far too uncertain for this Court to grant a stay in spite of Defendants' perfunctory arguments on the other stay factors.

C.  Harm to the Defendants, and Harms to the Debtor and Third Parties.

In entering its preliminary injunction last week, the Court previously considered the harm of its order to Defendants, and the balance of harm to the parties and affected third parties. It ruled that "the harm to the Defendants pales in comparison to the irreparable harm" to the Debtor. Failing to issue an injunction, the Court found, would cause the Debtor's business to "fail immediately" and "wreak havoc on the lives of 1,348 patients that are medicated, bathed, clothed, and otherwise cared for by the Debtor's caregivers." Issuing the injunction, the Court found, would only harm Medicare insofar as it would cause a "potential loss of funds over which it could assert offset or recoupment," an amount limited both by the short length of the Court's injunction and by the Court's finding that much of the suspended payments were likely "not tainted by the . . . allegations of fraud."[12]

Defendants offer no arguments to displace these findings. They merely argue that Medicare's interests are categorically stronger than those of the Debtor in continued survival. [AP Doc. 11 at 15.] Even if this were so, the argument overlooks the interests of the patients who would be harmed by a stay of the Court's injunction. *See Lundergan-Grimes*, 769 F.3d at 921 (instructing courts to consider the harm to others, not just appellees, in issuing stays pending

---

[12] The Defendants' letter suspending payments [AP Doc. 1, Ex. A] cites only four alleged cases of abuse over ten months that would make up 0.2% of the patients treated and funds paid by Medicare during that period.

appeal). Are the patients' interests also categorically lesser than the pecuniary interests of the Medicare Trust Fund?

In any event, the Court has previously considered and rejected Defendants' arguments that their interest in the sanctity of Medicare Trust Fund dollars outweighs the Debtor's interest, and that of its employees and patients, in the Debtor's continued survival. The fact that Defendants do not seek a stay of the Court's injunction with respect to the $500,000.00 that they have already paid under the Court's order only tips the balance of harm further in the Debtor's favor. Previously, this Court weighed the balance of harm in an injunction ordering an immediate wire transfer of $500,000.00, plus de-suspension of the July payments, and found they weighed in favor of the Debtor. Now, all that is at stake on Defendants' side is the remaining July payments.

D.     The Public Interest.

Finally, Defendants argue that the public interest would be served by a stay. This Court found last week that the public interest would be served by its injunction, reasoning that the public interest was served by protecting "the fragile patients served by the Debtor," and "by the rehabilitation of a troubled company," which would save approximately two hundred jobs. Defendants provide little to cause the Court to change that assessment. They do argue that, having released $500,000.00 to the Debtor already, the Debtor now has sufficient time and capital to transition its patients to other providers. This is conclusory guesswork which ignores the impact a sudden stay would have on a Debtor that has budgeted on the basis of the Court's temporary injunction. It also contradicts the Court's findings that enjoining suspension of the July payments *in toto* was necessary to protect the Debtor and its patients.

For the foregoing reasons, the Court denies Defendants' Motion for a Stay Pending Appeal.

II. <u>Motion for Stay Pending Appeal of Interim Cash Collateral Order.</u>

The motion for stay, pending appeal of this Court's interim cash collateral order, which allowed Debtor to spend cash collateral until a final hearing on July 30, 2015, relies almost entirely on the arguments in the motion to stay the Court's preliminary injunction, which the Court has already rejected *supra*. [*See* Doc. 68 at 1.] The United States does add that "the cash collateral at issue . . . consists of Medicare funds that are not the property of the Debtor." [*Id.*] The Court, however, has found that the evidence at this time shows most of the suspended payments are likely untainted by Defendants' allegations of fraud, and thus property of the Debtor's estate. Further, enjoining Defendants from suspending payments only to prohibit the Debtor from spending those payments on payroll and vital services would render the Court's injunction a practical nullity, causing the same harms that make stay of the injunction inappropriate. Having declined to stay its injunction, the Court will not destroy it. The United States' Motion for Stay Pending Appeal of the Interim Cash Collateral Order is denied.

III. <u>Conclusion</u>.

Based on the foregoing reasons, it is ORDERED:

(1)    The Defendants' Motion to Stay Pending Appeal [AP Doc. 11] is DENIED; and

(2)    The United States' Motion for Stay Pending Appeal of Order Allowing Interim Use of Cash Collateral [Bk Doc. 68] is DENIED.

15

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Thursday, July 09, 2015
(grs)